IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Emmitt G. Roscoe, Jr.,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | 1:19cv1536 (TSE/IDD) |
| ) | |
| **Harold Clarke, et al.,** ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Emmitt G. Roscoe, Jr., ("Plaintiff"), a Virginia inmate proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983, and alleged in his amended complaint that while detained within the Virginia Department of Corrections ("VDOC") at the Sussex I State Prison ("Sussex I") alleges Defendants William Jarrett, D. C. Roundtree, Whethington, A. Parker, M. Hill, and Major D. Phelps, ("Defendants"), violated his constitutional rights on or about November 5 through 9, 2019. Defendants have filed a motion for summary judgment supported by a brief, affidavits, and exhibit. [Dkt. Nos. 20, 20-1, 20-2].[1] Plaintiff has been afforded the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), but he has not responded. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the defendants' motion for summary judgment will be denied without prejudice.

Plaintiff has raised four claims:

    A.  Defendants Roundtree, Hill, Phelps, Whethington, Jarrett, and Parker violated

---

[1] The claims against six other VDOC defendants (Clarke, Robinson, Earncot, Celie, Hamilton, and Forman) were dismissed for failure to state a claim on June 26, 2020. [Dkt. No. 7]. A defendant Plaintiff designated as "Garcia," that he names with respect to the deprivation of a food tray on November 5, 2018 [Dkt. No. 1 at ¶ 26] has not been served and counsel for the VDOC defendants has stated there was no one with the last name employed by the VDOC with the last name "Garcia" at Sussex I at the time of the allegations in the complaint. [Dkt. No. 10]. Plaintiff was directed on May 21, 2021 to provide a correct name and address for "Garcia" within twenty-one days of that date. [Dkt. No. 26]. Plaintiff has not responded, and defendant "Garcia" will be dismissed without prejudice.

    Plaintiff's First Amendment right to be free from retaliation by withholding food because he filed a grievance. [Dkt. No. 1 at ¶ 49].

 B. Defendants Jarrett, Wethington, Roundtree, Parker, Hill, and Phelps violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by 1) depriving him of food and 2) holding him in ambulatory restraints for over 30 hours. [Id.].

 C. Defendants Jarrett, Roundtree, Phelps, Parker, and Whethington violated Plaintiff's Eighth Fourteenth Amendment right to due process as it relates to the conditions of his confinement by keeping him in ambulatory restraints. [Id.].

 D. Defendants Roundtree, Jarrett, Parker, Phelps, and Whethington are liable for supervisor and bystander liability. [Id.].[2]

Defendants have moved this Court to grant summary judgment in their favor asserting Plaintiff failed to exhaust his administrative remedies prior to filing suit. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that defendants contend are undisputed.[3] Although Plaintiff has not complied with his obligations under those Rules, his verified complaint expressly avers that he has exhausted his claims and the averments are supported by documents. Accordingly, the following statement of uncontested facts is derived from a review of defendants' statement of undisputed facts, the nonmovant's response, and the record.

## I. Undisputed Facts

1. Plaintiff is an inmate incarcerated with the VDOC who was housed at all relevant

---

[2] Defendant Moyler is named as a defendant in claims A, B, and D, but is not listed herein because he is not part of the present motion filed by the other defendants. Plaintiff had also brought a fifth claim for violations of "municipal state tort violations" related to the policy governing the use of ambulatory restraints against Defendants Clarke and Robinson. Defendants Clarke and Robinson were dismissed on June 26, 2020, and accordingly, the fifth claim is no longer part of this suit. [Dkt. No. 7].

[3] The record of admissible evidence includes defendants' affidavits and exhibits. [Dkt. No. 21-1, 21-2]. The complaint was verified [Dkt. Nos. 1 and 1-1], but plaintiff has not responded to the motion for summary judgment. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit").

times at Sussex I.

2. E. Witt is the Institutional Ombudsman at Sussex I and is not a party to this lawsuit. Christine Carroll is the Unit Manager of the VDOC Correspondence Section and is not a party to this lawsuit.

## VDOC Grievance Procedures

3. The offender grievance procedure described in Operating Procedure ("OP") 866.1 provides a mechanism for inmates to resolve complaints and appeal administrative decisions. The process provides the correctional administrators a means to assess potential problems and, when appropriate, rectify the problems in a timely manner. [Dkt. No. 21-1 at ¶ 4].

4. Each inmate is entitled to use the grievance procedure and reprisals are not imposed upon inmates for filing grievances. [Id.].

5. All issues which affect the grievant personally are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, disciplinary hearings, court decisions, laws and regulations and matters beyond the control of the Virginia Department of Corrections. [Id. at ¶ 5].

6. Grievances that do not meet the filing requirements of OP 866.1 are returned to the inmate within two working days with the reason for rejection noted on the intake section of the grievance form. The inmate is instructed on how to remedy the error. [Id.].

7. Reasons for rejection include, but are not limited to, more than one issue per grievance, expired filing period, repetitive filing, insufficient information, and the filing is a request for services. [Id.].

8. If an inmate wishes to appeal an intake decision, the inmate may send the rejected grievance to the applicable Regional Ombudsman for a determination. There is no further review

3

of the intake decision. [Id.].

9. Regular grievances must be submitted within 30 calendar days from the date of the incident. Prior to submitting a regular grievance, the inmate must demonstrate that he has tried to resolve informally his complaint. This may be accomplished by submitting an informal complaint to the grievance department at the appropriate institution, who then forwards the Informal Complaint to the proper department head. [Id. at ¶ 6]. Prison staff should respond to an inmate's Informal Complaint within 15 calendar days to ensure that the informal responses are provided prior to expiration of the 30-day time period in which an offender must file his Regular Grievance. [Id.].

10. If the inmate is dissatisfied with the response to the informal complaint, the inmate may submit a regular grievance on the issue. If the inmate submits a regular grievance, he is required to attach the informal complaint as documentation of his attempt to resolve the issue informally. [Id.].

11. There are three levels of review available for regular grievances. Level I reviews are conducted by the Warden or Superintendent of the facility where the inmate is located. [Id. at ¶ 7].

12. If an inmate is dissatisfied with the Level I determination, he may appeal the determination to Level II. Level II reviews are conducted by the Regional Administrator, Health Services Director, or Chief of Operations for Classifications and Records, depending on the issue. [Id.].

13. The time limit for issuing a Level 1 response is 30 days and 20 days for a Level II response. [Id.].

14. Expiration of the response period without a response, automatically qualifies the grievance for the next stage of review. [Id.].

15. The exhaustion requirement is only met when a regular grievance is appealed through the highest level of appeal without satisfactory resolution of the issue. [Id.].

## Exhaustion

16. Plaintiff asserts he exhausted his administrative remedies related to the issues in his complaint. [Dkt. Nos. 1 at ¶ 44-45; 1-1 at 46, 48, 50, 53].

17. On November 9, 2018, Plaintiff submitted an Emergency Grievance No. 170599, in which he complained about not being released from ambulatory restraints. [Dkt. No. 1-1 at 2]. A response to the Emergency Grievance was issued November 9, 2018 indicating that he would be released from ambulatory restraints that same day because of his compliant behavior. [Id.].

18. On December 2, 2018, Plaintiff filed an Offender Request form in which he stated that he had given Ms. Foreman a "stack" of informal complaints on November 15, 2018, but he had not received responses. [Id. at 44]. On December 5, 2018, Foreman responded that she could not verify the substance of grievances given to her and told Plaintiff that when he gave her "grievances to turn [in], the forms are submitted to the grievance dept. on the same day." [Id.].

19. Three of the informal complaints submitted by Plaintiff related to the issues and dates in his complaint were not marked received by the grievance department. [Dkt. Nos. 1 at ¶ 44; 1-1 at 46, 48, and 50].

20. The Regular Grievances related to his complaint were rejected on December 5, 2018 and returned to Plaintiff because Plaintiff had not attempted to first resolve the issues by using the informal process, or he raised more than one issue in the informal complaint. [Id. at 53-54, 56-57, 59-60, and 62-63).

21. Grievance records kept at Sussex I reflect two regular grievances stamped "Received, December 5, 2018, Sussex I State Prison Grievance Office," that concern the claims in this

lawsuit. [Dkt. No. 21-1 at ¶ 8, and 20-21, 22-23]. The date portion of the grievance indicates Plaintiff executed the grievance on "12-6-18." [Id. at 20]. The grievance states that Plaintiff had been placed on "alleged hunger strike protocol" on November 7, 2018 despite his claims that he had advised staff that he was being deprived of food. [Id.]. Despite Plaintiff's claim in his regular grievance that he submitted an informal complaint [Id. at 21], on December 5, 2018, Witt rejected the grievance at intake because Plaintiff had failed to use an informal complaint to resolve the issue before filing a grievance. [Id.]. Plaintiff appealed to the Regional Ombudsman. The appeal was received on December 26, 2018, and denied "because the 5-day time limit had been exceeded." [Id.].[4]

22. On December 5, 2018, a second regular grievance stamped "Received, December 5, 2018, Sussex I State Prison Grievance Office," that concerns the claims in the lawsuit stated that Plaintiff had been placed in ambulatory restraints for flooding his cell, when he did not flood his cell [Id. at ¶ 10 and 22], which were authorized by Assistant Warden Jarrett, Lieutenant Wethington, Sgt. Moyler, Sgt. Parker, and Captain Rountree. [Id.]. The date portion of the grievance indicates Plaintiff executed the grievance on "12-6-18." [Id.]. The grievance states that Plaintiff was deprived of restroom breaks, food, and water for no reason. [Id.]. Despite Plaintiff's claim in his regular grievance that he submitted an informal complaint [Id.], on December 5, 2018, Witt rejected the grievance at intake because Plaintiff had failed to use an informal complaint to resolve the issue before filing a grievance. [Id. 23].

23. During this same time period, on November 20, 2018, an informal complaint was received from Plaintiff in which he complained that his common fare religious meals were not being handled and properly administered. [Dkt. No. 21-1 at ¶ 9, and Enclosure D). He stated that

---

[4] The informal complaints submitted by Plaintiff are stamped "Received, December 26, 2018, Regional Ombudsman Unit Eastern Region." [Dkt. No. 1-1 at 46, 48, and 50].

during the week of November 11, 2018, he received meals without a spoon, butter, sugar, and fruit. [Id.]. Plaintiff also stated that the common fare trays were not being kept separate from the other meal trays. [Id.]. On December 7, 2018, Food Services Staff Turner responded that Plaintiff could not have fruit in segregation, and that items such as a spoon, sugar and butter are sent to the building. [Id.].

24. Plaintiff has submitted several documents that he has entitled "Certificate of Service" that he had notarized by T.B. Leabough. [Dkt. No. 1-1 at 45, 47, 49, 52, 55, 58, and 61]. Plaintiff claims these documents demonstrate that he timely filed his informal complaints, regular grievances, and appeals. [Dkt. No. 1 at ¶¶ 44-45].

25. Operating Procedure ("OP") 866.3, effective August 1, 2018, Offender Legal Access, governs the role of a notary public in a VDOC prison.[5] OP 866.3 states that "[t]he elements of the affirmation notarial act are that the offender appears in person before the notary, the offender's identification is confirmed, and the offender makes a vow of truthfulness or fidelity on penalty of perjury." OP 866.3 §VI(A)(1). "Materials submitted for notary services will not be read except as required for notarization, and shall be notarized in the presence of the offender, signed, and returned to the offender." Id. at §VI(A)(4). The notary confirms the identity of the offender and asks the offender "Do you swear or affirm that the contents of this document are accurate and truthful under penalty of perjury?" [Id.]. at §§VI(A)(5)-(6). By notarizing the document, the notary is in no way verifying the truthfulness of its contents.

26. An offender satisfies the exhaustion requirement only when a Regular Grievance has been carried through the highest eligible level of appeal without satisfactory resolution of the issue. [Dkt. No. 21-1 at 11, citing OP 866.1 (IV)(O)(2)].

---

[5] See https://www.vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-866-3.pdf, (last accessed July 27, 2021).

7

27. "If a Regular Grievance does not meet the criteria for acceptance and review by the Regional Ombudsman does not result in intake into the grievance procedure, the issue must be resubmitted in accordance with the criteria for acceptance." [Id. at 11, citing OP 866.1 (IV)(O)(2)(b)].

28. "The exhaustion of remedies requirement will be met only when the Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue." [Id.].

29. Plaintiff submitted copies of documents he alleges are his appeals that are marked received by the Regional Ombudsman on December 26, 2018. [Dkt. No. 1-1 at 53-54, 56-57, 59-60, and 62-63]. Each appeal was rejected because it had not been filed within the 5-day time limit for filing an appeal of an intake decision. [Id.].

30. Plaintiff attached a letter to his complaint dated December 3, 2018, from Christine Carroll, the Unit Manager of VDOC's Correspondence Section. [Id. at 72]. Carroll's letter was sent in response to Plaintiff's November 9, 2018 letter in which he complained that he had been denied meals from November 5, 2018 through November 9, 2018 and that he had been placed in restraints for more than 30 hours. [Id.]. In that letter, Carroll acknowledged that Plaintiff had submitted Informal Complaints SXI-18-INF-02904 and SXI-18-INF- 03128 complaining of being held in restraints for 30 hours and she informed him that if he was not satisfied with the response he had received, he needed to use the grievance procedure. [Id.].

31. Informal Complaints SXI-18-INF-02904 and SXI-18-INF-03128 do not, however, relate to the dates of the allegations in this civil action. Informal Complaint SXI-18-INF-02904 is marked received at Sussex I on August 3, 2018 [Dkt. No. 21-2 at ¶ 6, 11] and states that on July 9, 2018, Lieutenants Smith and Brown forced him to stay in a cell in full restraints with no

8

working toilet, no running water, and with feces and other bodily waste for 30 hours. [Id.]. The informal complaint was responded to on August 15, 2018. [Id.].

32. Informal Complaint SXI-18-INF-03128 is marked received at Sussex I on August 23, 2018 [Id. at ¶ 7, 12], and stated that on "7-19-18 at approximately 5 p.m." Plaintiff was placed in ambulatory restraints per orders of ADO Adams for 18 hours. [Id.]. The informal complaint was responded to on September 5, 2018. [Id.].

33. Plaintiff attached a second letter from Carroll dated December 4, 2018. [Dkt. No. 1-1 at 76]. Carroll sent that letter in response to Plaintiff's letter dated November 24, 2018, in which he complained that Warden Hamilton and other staff had denied him food, medication, other necessities. [Id.]. In her response, Carroll acknowledged that Plaintiff had submitted Informal Complaint Nos. SXI-18-INF-03329, SXI-18-INF-03330, SXI-18-INF-03642 and SXI-18-INF-03480. [Id.].

34. The dates of the allegations in the four Informal Complaints referenced by Carroll's December 4, 2018 letter do not align with the dates in this civil action.

35. Informal Complaint No. SXI-18-INF-03329 was received at Sussex I on September 11, 2018 [Id. at ¶ 9, 18], and stated that on August 21, 2018 security staff A. Smith, A. Parker, T. Foreman deprived him of a medically prescribed diet. [Id.]. The informal complaint was responded to on or about September 18, 2018. [Id.].

36. Informal Complaint No. SXI-18-INF-03330 was received at Sussex I on September 11, 2018 [Id. at ¶ 10, 19], and stated that "on 8-21-18 food service personnel deprived [him] of a medically prescribed diet tray for the 5th consecutive day." [Id. at 19]. The informal complaint was responded to on September 14, 2018. [Id.].

37. Informal Complaint No. SXI-18-IF-03480 was received at Sussex I on September 21,

9

2018 [Id. at ¶ 11, 20], and stated that Sussex I "supervisors of the segregation unit" had refused him recreation on September 18, 2018. [Id. at 20]. The informal complaint was responded to on September 25, 2018. [Id.].

38. Informal Complaint No. SXI-18-INF-03642 was received at Sussex I on October 9, 2018 [Id. at ¶ 12, 21], and stated that on September 29, 2018, Plaintiff was not provided his breakfast tray by Officer Belshane. [Id.]. The informal complaint was responded to on or about October 22, 2018. [Id.].

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate, i.e., that no genuine issues of material fact are present for resolution. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The facts which a moving party bears the burden of proving are those which are material: materiality is dictated by "the substantive law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once a moving party has met its burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court will view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Nevertheless, "[o]nly disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

10

The non-moving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This applies even where the non-moving party is a pro se prisoner. Campbell-El v. Dist. of Columbia, 874 F. Supp. 403, 406-07 (D.C. 1994); see also Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements. Unsupported speculation is not enough to withstand a motion for summary judgment. See Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it "might affect the outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted).

### III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement is mandatory," Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)), and an "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). Exhaustion is required even if the administrative remedies do not meet federal standards, are not "plain, speedy, and effective," and

even if the relief sought is not available via the grievance process, such as monetary damages. Porter, 534 U.S. at 524. To properly exhaust, thereby giving the agency a full and fair opportunity to adjudicate a plaintiff's claims, the plaintiff must adhere to the agency's deadlines and procedural rules. Woodford, 548 U.S. at 89–90.

The PLRA also requires that an inmate must exhaust his administrative remedies *before* bringing a suit to challenge prison conditions. Ross v. Blake, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)) (holding that the PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.") (emphasis added); see Graham v. Gentry, 413 F. App'x 660, 662-663 (4th Cir. 2011) (emphasis added) (the PLRA requires an inmate "to exhaust any "available" administrative remedies *before* pursuing a § 1983 action in federal court). The requirement that a prisoner exhaust before filing in court "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." Porter, 534 U.S. at 519.

The record regarding exhaustion of administrative remedies is in this civil action is in dispute, and cannot be resolved on the current record particularly, but not exclusively, with regard to what was submitted, when it was submitted, who it was submitted to or returned to, how what was submitted was processed and by whom, what a date stamp means, are date stamps placed on every page received, and the specific procedures and personnel who actually handled/processed the various documents.[6] In addition, Plaintiff's argument relies upon the responses from VDOC employees in unchallenged VDOC documents and documents notarized

---

[6] The matter to be resolved is similar in nature to proving the chain of custody of a piece of evidence.

by a VDOC employee. Despite the involvement of non-defendant VDOC employees in handling the documents in question, the VDOC defendants have not introduced affidavits or declarations from the non-defendant VDOC's employees that would clarify what was done, by whom, etc.

### A. Informal Complaints

Plaintiff states that defendant Witt falsified the date she received his grievances, which were stamped received on December 5, 2018, and avers that Witt actually received them on December 6, 2018. The point is relevant because if the grievances were received on December 5, 2018, that would negate Plaintiff's assertion that the informal complaints were attached to the grievances he submitted.[7] In short, if the grievances were filed on December 5, 2018, Plaintiff failed to comply with the grievances procedures, his claims are not exhausted, and defendants' motion for summary judgment should be granted.

To establish his allegation that Witt forged the date stamp, Plaintiff relies on a response from Foreman to a VDOC "Offender Request." In the request portion of the form, Plaintiff discusses alleged problems he has had with the grievance process and references "Grievances and Informals" he allegedly gave Foreman "on 12/6/18." Her reply states that "the last set of grievances and informals [he] gave [her] were turned in to the grievance department." [Dkt. No. 1-1 at 51]. Foreman does not expressly state in her reply that she is referring to documents received on "12/6/18," but the defendants' affidavits an exhibits do not address this point. As noted, there is no affidavit from Foreman in the record, and there is no affidavit from the notary, T.B. Leabough who notarized the "Certificates of Service" Plaintiff created and used, and

---

[7] Plaintiff avers in his complaint that Witt's alleged falsification of the documents renders the grievance process "unavailable" to him and excuses his failure to exhaust. [Dkt. No. 1-1 at 64]. Plaintiff has also averred that the informal complaints were submitted on December 6, 2018. [ Id. at 52, 55, 58, 61].

13

submitted with his complaint.[8] The defendants do not indicate who or how the December 5, 2018 stamp was placed on the grievances, why no date stamp appears on the informal complaints if they were submitted to Foreman, or if receipts of any sort were issued to plaintiff or when they were issued.[9] In addition, Plaintiff avers he has submitted four grievances and the defendants aver that there were only two submitted.

*B. Appeals*

The defendants aver and argue that Plaintiff did not timely appeal the denial of the grievances. Witt avers the first grievance was not appealed in a timely manner and that Plaintiff did not appeal the second grievance. [Dkt. No. 21-1 at ¶ 10]. Plaintiff has submitted four sets of grievance appeals that are each marked received on December 26, 2018. [Dkt. No. 1-1 at 52-54, 55-57, 58-60, 61-63, 64-65]. Plaintiff also avers that he did not receive the denied grievances back from Witt at Sussex I until December 17, 2018, and that he mailed them to the Regional Ombudsman the next day, December 18, 2018. [Dkt. No. 1-1 at 65]. In their brief in support of the motion for summary judgment the defendants imply, *without proof*, that because Witt denied grievances on December 5, 2018 and the grievances received by the ombudsman on December 26, 2018 "they were rejected because the five day time limit for review had been exceeded."

---

[8] Plaintiff created handwritten certificates of service that include extensive discussion of allegedly what is being served, that also function as affidavits because they are sworn to as "true and correct." See, e.g., Dkt. No. 1-1 at 61 . Plaintiff's signature on each certificate is notarized and asserts that the certificates establish he submitted the grievances in a timely manner. Plaintiff attached three informal complaints with certificates of service to the Regional Ombudsman and each informal complaint was stamped "December 26, 2018" by the Regional Ombudsman's office. [Id. at 44-50]. The first certificate of service, dated November 15, 2018, concerned the use of restraints on November 8, 2018 for flooding his cell. [Dkt. No. 1-1 at 45]. The second certificate of service concerned being put on the hunger strike protocol on November 7, 2018. [Id. at 47]. The third certificate of service concerned being forced to eat in unsanitary conditions on November 7-9, 2018 because his toilet did not work. [Id. at 49].

Plaintiff has also submitted certificates of service that state he submitted informal complaints on November 15, 2018 regarding the toilet not working, being placed under the hunger strike protocol, and being placed in restraints without a mattress for flooding his cell. [Dkt. Nos. 52, 55, 58, 61].

[9] OP 866.1 V(A)(4) states each Informal Complaint is entered into VACORIS and a receipt is given to the offender. Neither party discusses this point. Are any Informal Complaints logged into VACORIS? Were any receipts issued? If so, why is Ms. Coleman answering an Offender Request?

14

[Dkt. No. 21 at 12]. OP 866.1 expressly states that if the "offender wishes review of an intake decision on any grievance, [the offender] may send the Regular Grievance form within five calendar days of receipt to the Regional Ombudsman for a determination." VDOC OP. 866.1 VI(B)(5). OP 866.1 VI(B)(4)(a) states that if the grievances is denied at intake, it is returned within two days but nothing in this record establishes when the grievances denied at intake were returned, which is relevant to the claim that the appeals were untimely.

While Plaintiff's averments are sufficient to create a dispute of fact regarding exhaustion, the Court is not satisfied that Plaintiff has actually exhausted his administrative remedies in accordance with OP 866.1, but it is the defendants' burden to establish that he has done so. Woodhouse v. Duncan, 741 F. App'x 177, 178 (4th Cir. 2018) ("defendants bear the burden of establishing that a prisoner has failed to exhaust his administrative remedies") (citing Jones v. Bock, 549 U.S. 199, 216 (2007)). The record provide by the defendants does not satisfy their burden. Accordingly, the motion for summary judgment will be denied without prejudice and the defendants will be granted leave to resubmit it.

## V. Conclusion

For the reasons outlined above, defendants' motion for summary judgment [Dkt. No. 20] will be denied without prejudice. An appropriate Order and judgment shall issue.

Entered this ___ day of _____ 2021.
Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge